Good morning, Your Honors. May it please the Court, Counsel. Your Honors, in simplest terms, this case is about enforcing a valid contract entered into between two persons. By refusing to refer this matter to arbitration, the District Court erred in three distinct ways. First, it was error for the District Court to hold that Margaret Triplet was without capacity to enter into the employment agreement with Menards. This issue is controlled by State law and competency goes to contract formation. Second, it was error for the District Court to hold that Barb Myers, an agent of Menard, was without authority to enforce arbitration. This question is controlled by the allegations in the amended complaint and State law. Finally, it was error for the District Court to hold that none of Ms. Triplet's claims fell within the ambit of arbitration. This final issue is controlled by the allegations in the amended complaint and by Federal common law. Counsel, I have a factual question for you. Did you ask for a summary trial before the District Judge? I didn't, Your Honor, and I don't believe that as the party wishing to enforce arbitration has the right to request the summary trial under Section 4. So it would be only the person who's resisting could ask for a summary trial? That's my reading of Section 4 of the FAA, Your Honor, yes. The reason why I ask that is because capacity to contract under the law here, under State law here, is highly fact dependent. And we have evidence going both ways. So it's weird that we skipped over to summary judgment and we didn't have a summary trial to actually decide the disputed factual issue. I know your viewpoint is that there's no factual issues. I'm sure just like in the last case, their viewpoint is there's no factual issues. But there are facts going both ways. And so a trial seems like it would have been appropriate. Your Honor, to respond, yes, there are facts going both ways. But Menard contends that the facts from the appellees don't meet the standard applied in South Dakota. And to merit a trial, it has to be demanded within five days of the petition under Section 4. And some evidence has to be put forward. You know, I would get that argument if the entire argument was that, you know, Paragraph 4 and Paragraph 5 of the letters of guardianship and conservatorship do not state that the ward has been deprived of their ability to contract. But there's South Dakota case law out there that says that one may be deprived of their ability to contract because they lack that ability. They just are not able to form a contract. They lack capacity. And that that can be established with evidence at the proceeding. And here what we've got, we've got statements that they say that the person lacked capacity. They rely on medical records that are well after the issuance of the order. And so the circumstances could have been influx or changing. And it seems to me that under those circumstances that this really calls out for a summary trial, right? I mean, because how was Judge Kornman supposed to know whether or not she actually was competent to enter into this contract at that time? Your Honor, on this issue, when the petition is filed, the summary judgment standard does apply. And then the party resisting arbitration has to come forward with some evidence to create a genuine issue of material fact on competency. In this case, the controlling law is First State Bank of Sinai v. Highland, a South Dakota Supreme Court case from 1987. And in that case, the standard applied there was that the party resisting the contract bears the burden of proving that she was entirely without understanding when she contracted. The focus needs to be on when the contract was actually formed. The evaluation submitted by the apolis in this case predated the contract by two years. So any medical records that were available at the time of employment, Judge Kornman didn't consider. They are all predated employment. So your argument is essentially is that, well, we have a finding that does not deprive the ward of competence at the time that the conservatorship was established. Second, that the only medical evidence that's presented is two years before the date of the incident. And so therefore, Judge Kornman had no evidence before him from which he could determine, I think there's a fact question. Because I'll just tell you what, frankly, as an old trial judge, I don't think I need somebody to tell me that there are questions of factor that we need to try. I mean, I think that if I see this, I say, this seems to cry out for one of those summary trials, and I'm going to hold one. But your argument is that there was no evidence, actually, from which the judge could make any decision at all about what Ms. Triplett, what her level of competence was on the date that the contract was entered into. It is, Your Honor, because the evaluation that was submitted to Judge Kornman was submitted for the very purpose of being appointed a guardian and conservator. Yet the State Court, confronted with the same document, did not hold that Ms. Triplett was without capacity to contract. In fact, the appointment order that the State Court did enter simply echoed South Dakota law. And under South Dakota law, 29A5118 states that the appointment of a guardian or conservator of a protected person does not constitute a general finding of legal incompetence unless the court so orders. The South Dakota Circuit Court had the authority to deprive Ms. Triplett of the ability to contract, but it did not. Under 118, therefore, the ability to contract stayed with her. What about the fact that we have the evidence from two years before, but we have one key fact that's relied on, I think, by the district court. In fact, I think it may be determinative, which is the job coach was not allowed to accompany her into the orientation. I read, what the district court did here, when saying she's not totally incapable, as saying she's probably on the line, but when you don't allow the job coach to come in, she's easily manipulable. And so in that way, she didn't have the capacity to contract at that particular time. Yes, Your Honor. So that allegation comes from the amended complaint. There is no — there is — under the summary judgment standard, resting on a pleading is not allowed. There has to be some evidence supporting that contention. They could have — there was no affidavit from the job coach, no affidavit from the guardian. There is nothing other than the allegation. And under the summary judgment standard, that won't carry the day. Okay. What is the — you know, one of the things I'm struggling with on the summary trial point, before we completely leave that, is what is the standard of review here? And the reason why I ask that is under State law, it's clear error, right? So if we're — if we have a factual finding, it's clear error. If we're under summary judgment standard in Federal law — in Federal court, or de novo, what is the standard of review? Because we have a — almost a mixed — a mixed deal here. Agreed, Your Honor. So my reading of Eighth Circuit precedent is that the denials of motions to compel arbitration are reviewed de novo. Factual findings are reviewed for clear error, but the mixed questions of law and fact are reviewed de novo. So as it pertains to applying law to facts, it's a de novo review. So the appellants would advocate for a de novo review in this case. Okay. Based upon 29A5118, Your Honors, the guardianship and conservatorship should not be considered in determining — in considering whether Ms. Triplett had capacity to contract. Instead, the controlling case is First State Bank of Sinai v. Highland. Again, as I just mentioned under that — under that standard, Ms. Triplett was required to prove that she was entirely without understanding when she contracted. In an effort to carry this burden, Ms. Triplett relies on four documents. These — three of these documents she put into the record in the district court in response to the district court's August 2 memorandum. And then, moreover, half of her response in the district court went to capacity. The heading of her — of the — the heading of the first section was Maggie did not have authority or capacity to contract. If there was other evidence to be submitted on the issue of competency, it should have been at that time. Moving on to the second issues — the second issue, Your Honors, the district court erred in holding that Ms. Myers — Barb Myers could not enforce arbitration. This issue is controlled by state law generally, but the only reported South Dakota case is Rossi v. Gunderson, a South Dakota Supreme Court case from 2002. In that case, the South Dakota Supreme Court actually applied federal law. And then under wholesale grocery products in the Eighth Circuit case, federal law that applies. Under federal law, the Eighth Circuit has adopted three circumstances wherein a non-signatory can enforce arbitration. Menard argues for two of those. The first is the agency test is what I'll call it. That's based on agency-related principles. In this case, there's no dispute that Barb Myers was a manager within the Menard organization. I think under — excuse me, under Eighth Circuit precedent, she is definitively an agent and a close relationship with Menard. All the allegations within the amended complaint are based upon Ms. Myers and her business capacity, not her personal capacity. Crucially, on counts two and three of the amended complaint, the assault and battery in the IIED, Ms. Tripple has alleged respondee at superior. She's alleged that Ms. Myers was within her — was within the court's scope of employment. Based upon that admission, this Court should find that Ms. Myers can enforce arbitration as an agent of Menard. Second, the concerted misconduct test, as I'll refer to it. This test requires the party wishing to enforce arbitration to show that the signatory and non-signatory engaged in concerted misconduct. In this case, Menard believes that concerted misconduct undergirds this entire case. It's alleged in the amended complaint that Ms. Myers told Mr. Brazel, the supervisor in the store, one of the meeting. The meeting was held. It's then alleged that Ms. Tripple tucked herself into a corner after Mr. Brazel and Ms. Myers began whispering about her. At that point, it's alleged that she was drugged back, Ms. Tripple was, to the meeting by Ms. Myers. Ultimately, Tripple alleged in her amended complaint that the conduct was, quote, authorized, ratified, and or approved of by Menards. That's concerted misconduct between a signatory and a non-signatory. Finally, Your Honors, all four counts in the amended complaint should be referred to arbitration. Ms. Tripple conceded in her brief that the arbitration agreement between Menard and Ms. Tripple is broad. The face of the amended complaint demands arbitration of the assault and battery. Again, this is based simply upon a review of the amended complaint. In this case, the arbitration agreement covers tort claims and any and all causes of action arising under state or common law. Torts and common law are what the assault and battery, IIED, and punitive damages claims are based upon, state law. As a result, they should be referred to arbitration. With that, I will reserve the balance of my time. Thank you. Thank you.  Good morning. May it please the Court. My name is Erin Schaumbach-Byrie, and I represent the respondent, Mary Triplett, who is the guardian and conservator for Maggie Triplett, a woman with severe autism. Arbitration agreements are a matter of consent and not coercion. As a result, the paramount and key question this Court must first answer is whether Maggie Triplett, a woman under a guardian and conservatorship, had the capacity to enter into the arbitration. agreement with Menards. Only if it overturns the district court on that issue can it reach the next two. The next two issues pertain to whether the intentional torts of a third party fall within the scope of the arbitration agreement and whether a third party non-signatory can enforce the arbitration agreement. So moving on to that first question, the district court determined that Maggie, under the given circumstances here, did not have the capacity to enter into the contract. As my opposing counsel stated, this issue is judged by state law, but the FAA does say that contracts shall be valid, saved upon grounds that exist at law or in etiquette. Counsel, I'm going to ask you just the same question I asked opposing counsel. Why not have a summary trial? There's just evidence that's fact-bound here that could benefit from further fact-finding. And, you know, Judge Korneman's mechanism for going about this issue is unique, to say the least. And we agree that if there's factual issues, that this be remanded for an evidentiary hearing. But as far as why one didn't occur, we didn't press for one because we hadn't yet responded to that motion when Judge Korneman issued the memo, and we have yet really to respond to the motion outside response to the memo. So the motion came, and then you didn't respond, and Judge Korneman had already decided it in your favor, leaving you without, you know, wanting to respond. I see. That's where you go. So you didn't have a chance to respond, nor did you have a chance to suggest that perhaps a summary trial on the issue might be appropriate. Arguably, we could have done it in the memo, and I'm not going to hide behind that fact. Sure. But Judge Korneman expeditiously issued that memo. So as a result, we didn't have that hearing. All right. Thank you. Going back to the standard that judged whether an individual has capacity to contract in South Dakota, in South Dakota, its capacity, and I argue in every jurisdiction, is a prerequisite to a valid contract. And if that capacity doesn't exist, the contract is void. Now, you heard opposing counsels say that the state bank or Bank of Sinai, the Highland, test controls. What you're going to find is that case actually comes before the statute that, or this case that we cite in Reykindle. And if you read the rest of the sentence from State Bank of Sinai, the Highland, it goes on to the exact same test that's in Reykindle. So how the sentence works is it says someone's entirely without capacity to contract, but then it says that our court, South Dakota, has been struggling with this issue, I think, since 1902, but don't quote me on that date. But then it says the test is whether an individual understands the nature and the consequence of their actions at the time of contracting. And then if you look at the Reykindle case, which we cite, it actually draws back to that State Bank of Sinai and says the appropriate test for capacity in South Dakota is whether the individual understands the nature and the consequence of their actions at the time of contracting. And that's really important here, because as you've reviewed the record, Maggie at the time of contracting was under a guardian and conservatorship. In order for the circuit court to determine that she needed to be under that guardian and conservatorship, the circuit court reached this determination based on Maggie's counselor's findings. Maggie's counselor's findings, which we attached with an affidavit included in the memo, discussed that Maggie is an individual who's easily influenced by others. She shuts down in stressful situations. Her default answer is yes when posed with a question, and she's overly agreeable to individuals. What about the fact that these, the counselor opinions, I think opposing counsel said they were two years before she had this arbitration agreement presented to her. Is there a problem with it being sort of stale or anything like that? No, Your Honor. South Dakota has a statutory scheme where a guardian and conservatorship stays in place until they make a motion and actually withdraw that guardian or conservatorship. While the guardian and conservatorship is in place, then the court has determined that that individual still lacks the capacity to manage their everyday life, their property, protect their legal interests. Mary has never made that motion or requested that sort of relief to review this guardian and conservatorship, because as we all know, autism is an immutable disease. One doesn't grow out of autism. You can learn ways to cope with your autism, but it's something that Maggie and Mary will deal with for the rest of their lives. But doesn't South Dakota, and you can correct me, I thought South Dakota had some case law that suggested that just because you're in a guardianship or a conservatorship doesn't mean that the person lacks the capacity to contract. Am I wrong about that? Yeah, there's a statute that says that, Your Honor. Well, it says that they regain their legal capacity, and I think there's an important distinction to be made there, because Maggie could have entered into a valid contract, but for the contract not being presented to her guardian and conservator, but for her job coach not being present, and but for her not having the opportunity to review with a third party. Here, if the job coach would have been permitted to go up with Maggie, review the contract, walk through it so she could understand the nature and the consequence of her action, then she could have had that capacity to enter in that contract. So what the statute's saying, you'll see that's why SDCL 29A-5-4116 talks about how a guardian and conservator is necessary to complete the contract. It doesn't say that the guardian and conservator has to enter into the contract for the ward. It says to complete it. So what that means is the guardian conservator, who is an individual the court has deemed necessary to protect that person's interest, must review that contract or at least be aware of the contract. Mary Triplett didn't become aware of this arbitration agreement until the motion was filed by opposing counsel. That in and of itself shows that Maggie didn't have that capacity, because the guardian and conservator didn't have the opportunity to even see the contract. What about the, just as a follow-up, and this is critical, the job coach. I think the way I read Judge Kornman's order, as I said before, is that the presence of the job coach would have made a lot of you never submitted an affidavit saying the job coach wasn't present. So how did the district court reach that conclusion if there was no evidence to that effect? We argued it in our brief, and this is at the preliminary stages of litigation. This goes back to that this could be remanded for an evidentiary hearing where we can make that, where the court can make that determination. I would argue that that's a factual question that the circuit court Judge Kornman made, so it has to be here. We argued it in our brief, and if it is presented in an evidentiary hearing as allowed, we will present evidence to show that. Well, and that brought up a question. I was just saving it, but what is the standard of review here? Because we have factual findings made in almost a summary, we've called it analogous to a summary judgment proceeding, which is de novo, but then we have the state case law that says clearly erroneous, but we only give clearly erroneous when there's actual, like, hearings and findings made from a hearing. So what do we do? And, Your Honor, I was thinking about this last night, actually. So if this is on a summary judgment standard, we're not the moving party here. So any questions about the factual situations should be construed in our favor, i.e., the job coach was not present during that hearing. So if this is judged on that summary judgment standard, we get the job coach, that she wasn't there. As far as I would say that the legal questions, issues two and three are de novo, but issue one, since capacity is such a fact-intensive issue, as you guys said, that's clearly erroneous, but the general legal determination of capacity is de novo, because it's a mixed question of fact and law there. Okay. So based on those, based on the circumstances we've discussed, Maggie did not have the capacity to enter into this contract in the district court, or this, I request that this court uphold the district court's determination. Can I ask you a question just about South Dakota law generally? Because I just don't know the answer. I was a county judge for years before I was a state district judge, for years before I became a federal district judge, and so I spent a lot of time actually working with conservatorships and guardianships and all the letters of conservatorship that I ever did under North Dakota law. If I deprived some of the ability to enter into contracts, I said that. Now, the statutory scheme is not significantly different between North Dakota and South Dakota law. Is it customary in South Dakota law for judges to enter conservatorship letters that say the capacity to contract has been deprived of the ward? Now, it usually happens in a case, a guy's bipolar and he goes out and buys like, you know, ten Rolexes, watches, and gives them to his buddies, and then we say stop on that, right? But does that happen in South Dakota law? And your Honor, to be honest, I don't practice in that area of law, so I don't feel comfortable making that determination today. Opposing counsel might be able to answer it, but if you do look at the actual order that the Circuit Court entered into, it explicitly says that she lacks the capacity to meet her everyday needs, manage her property, and then it's necessary to protect her interests. Yeah, it also says that she should retain as much power and ability to make decisions as on her own as possible because it just tracks the language of the statute verbatim. Yes, but I would argue that that's, again, you have to look to SDCL 29A-5-411, that it's, you have to have the guardians consent or have the guardians consent. Yeah, I get that, and that makes perfect sense to me. All right, thank you, Your Honor. So moving on to Issue 2, which can only be addressed, and I'll try to cover this quickly as my time is running short, but Issue 2 can only be addressed if issue, if this Court overturns the District Court on Issue 1. And the District Court determined that the torts were out of the scope of the arbitration agreement. And I'm going to quick make a distinct, say something about both Issue 2 and 3 here. The relationship between Menard's and Ms. Tripp, or Menard's and Myers is not what this Court must analyze. What both these issues involve is contract interpretation. So what this Court has to look at is whether the contract explicitly provides for these third party torts to be placed under it. So as far as the respondeat superior theory, I'm just going to address that right now, that's looking at the issue under the wrong scope. Respondeat superior is tort liability. So you look at that that's not the lens we need to look at here. The lens we need to look at it through is contract interpretation. Rather, do those actions fall within the scope of this contract? So the Court needs to look to that. And so the respondeat superior pled in the complaint really holds no relevancy here. But if you look at the actual contract itself, you'll see that it is narrowly can be defined as a confidentiality and technology agreement. The contract starts out by saying employment agreement, but then it defines the terms of technology that Maggie must follow. It defines the terms of confidentiality that Maggie must follow. And then it says all cover disputes. It doesn't define what cover disputes are, but arguably, if read narrowly, we could say that the cover disputes only apply to confidentiality and technology. So arbitration could only apply to confidentiality and technology agreements that occur between Maggie and Menards. But more than that, and most importantly, what this contract leaves out, and of note, this contract was drafted by Menards. So the ambiguity should be construed against it. What it states is that this is a binding arbitration agreement between Menard, Inc. and me, me being Maggie. And then it says it can only be enforced by Menard, Inc. and me, me being Maggie. Menards failed to place its employees under its arbitral tent. In fact, if you look at the cases cited by Menards, CD Partners, and Perez v. Quest Corp., both of those intentional torts fell under the arbitration agreement because those entities drafted their agreements to say the entity are officers, directors, and employees. Menards did not draft this agreement that way. It only applies to the torts or any actions that apply between Menard and Maggie. Doesn't the respondeat superior argument then become relevant? Because if you're making a claim against Menards to have them pay the loss, isn't then Menard, Inc. being made responsible? And isn't your claim that it's their loss and then doesn't it fall back within Menards? I mean, I get where you're exactly right if the claim is just against Myers. But when you say, and Menards, don't they come back in? And then you have to look at the Dolby Princess Cruise Lines case and the Halliburton case and the recent case out of the Eastern District of Missouri that's currently on appeal, Anderson v. Hansen. And then you have to look at whether the individual's actions, because that's what the court said, not how it's applied, their actions are in furtherance of that agreement, or they arise out of the agreement, or they're a foreseeable instance of the agreement. Some courts also say whether the claim can be sustained without reference to the agreement. And the answer to those is all yes. They have Ms. Myers' action of grabbing and pulling Maggie across the floor has nothing to do with the relationship and the scope of the actions, whether they furthered that relationship. They had nothing to do with her duties in the Garden Center. They had nothing to do, in fact, a customer could bring these claims against Myers if Myers committed these claims in the Menard parking lot. Therefore, the arbitration agreement, those actions didn't arise out of the arbitration agreement and had no relevancy to the arbitration agreement. Suppose they got an argument, one was acting as a checker and the other one said, hey, you didn't charge the right price for that, and they got an argument, so it clearly had to do with their jobs. Would we have a different case? I'm just wondering how far this argument goes. So if, potentially, here you have to, here it had nothing to do with her duties. There I would argue, again, it still doesn't fall under their arbitral tent because they didn't place third parties' torts under the but you'd have to analyze that situation. Thank you. And I'd also ask that the district court uphold the third issue as well. Thank you. Thank you. I'll try to cover my points quick with my time issue. I'll try to keep it short. Your Honors, regarding the record in this case, the Appellees filed an affidavit and a brief on August 16 of last year. A month later, Menard's motion was denied. So in 30 days, despite intimating in their brief that they had additional things to file, in 30 days, nothing came. And under the South Dakota local rules, they only had 21 days. So any evidence not in the record is the fault of the Appellees not putting it into the record, despite bearing the burden of proof on these issues. Regarding the summary judgment standard, yes, generally speaking, allegations and disputes of fact are viewed in light most favorable to the opposing party. But in this case, as I mentioned during my principal argument, there is a presumption of competency and the presumption that one reads and understands what she signs in South Dakota. As a result, there should be a presumption in this case that the contract is valid, and as a result, any questions about whether arbitration was agreed upon should be resolved in favor of arbitration. Regarding, there is no dispute in this case of Ms. Triplett's suffrage from autism, but the Appellees themselves are not in the position to opine about how that interplays with her ability to understand the contract. They need expert opinion for that. In the evaluation they rely on, the evaluation itself states that she is within an average range for adaptive behavior and that she falls within an average range of IQ. Can I ask you, I know that the guardianship slash conservatorship is not determinative, but when you then add the fact that she had no, well, let's leave the job coach aside. You add the fact that two years before, you have these counselor's opinions that came in. Couldn't the district court have drawn the inference that she lacked the capacity to contract under South Dakota's standard? No, Your Honor, because I believe under 29A5118, it needs to be explicit. The right to contract needs to be explicitly taken away from the ward, and states that have. But that doesn't solve, that doesn't answer the question of whether conservatorship may be found to be incompetent, right? And so as a matter of law, you can say I deprive you of the right to contract, that's done. But you could also walk in and say this person on the date in question, where there's no piece of paper in the world that says she's incompetent, that you could still go in and prove she's incompetent, couldn't you? No, that's correct, but that's where State Bank of Sinai v. Highland comes into play and they have to meet the test that she is entirely without, entirely without understanding And the focus, again, is on the time the contract was formed. And because they bear the burden to prove incompetency, they need to come forward with some evidence showing that she was, in fact, incompetent under that test at the time she contracted. But it is a preponderance of the evidence standard, isn't it? It's not beyond a reasonable doubt or clear and convincing evidence or anything like that? Your Honor, I'm not sure, but because it's a civil matter, I would, I would, my assumption is that it's preponderance, but I'm not, I'm not, it also could be clear and convincing, because the clear and convincing standard does apply in guardianship proceedings. But again, because it's a civil matter, it could be preponderance also. I, I can't give you a straight answer. Sure. I understand. With that, I thank you, Your Honors. Thank you.